UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DARRELL W. BELL                                          CIVIL ACTION

VERSUS                                                   NO. 19-658-RLB

L & B TRANSPORT, LLC, ET AL.                             CONSENT

## ORDER

Before the Court is Hudson Insurance Company's ("Hudson" or "Defendant") Motion for Summary Judgment filed on December 15, 2020. (R. Doc. 13). The deadline to file an opposition has expired. LR 7(f). Accordingly, the Motion is unopposed.

## I.    Background

Darrell W. Bell ("Plaintiff") initiated this litigation with the filing of his Petition for Damages in state court on September 4, 2019, naming Hudson and L&B Transport, L.L.C. ("L&B") as defendants. (R. Doc. 1-3). Plaintiff alleges that he was travelling on the interstate in his 2000 Freightliner Model 8000 tractor to purchase new tires when he was rear-ended by another vehicle. (R. Doc. 1-3 at 1). Plaintiff further alleges that he can recover under a "policy of underinsured/uninsured liability insurance" issued by Hudson. (R. Doc. 1-3 at 4). Hudson removed the action on the basis that the Court has federal diversity jurisdiction under 28 U.S.C. § 1332. (R. Doc. 1).

On October 28, 2019, Plaintiff filed a Motion to Remand arguing that the Court lacks diversity jurisdiction. (R. Doc. 3). Among other things, Plaintiff admits in the Motion to Remand that at the time of the accident he "was driving his tractor which was leased through L&B Transport, L.L.C." (R. Doc. 3 at 1). The Court denied the Motion to Remand. (R. Doc. 11).

On December 15, 2020, Hudson filed the instant Motion for Summary Judgment. (R. Doc. 13). Hudson argues that coverage is precluded by the underlying insurance policy because

Plaintiff was using the vehicle "in the business of" L&B, and Plaintiff's actions were "intended to generate economic or commercial benefit" for both himself and for L&B. (R. Doc. 13 at 1-2).

The Court has dismissed L&B from the action on the basis that it was improperly joined as a defendant. (R. Doc. 14).

## II.    Law and Analysis

### A.    Legal Standards for Summary Judgment

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of their pleadings, but rather must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, summary judgment must be entered against the plaintiff, if he or she fails to make an evidentiary showing sufficient to establish the existence of an element essential to his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Without a showing sufficient to establish the existence of an element essential to the plaintiff's claim, there can be "no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

A moving party must support an assertion that a fact cannot be genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made

2

for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Local Rule 56 details the requirements for statements of material facts. "A motion for summary judgment shall be supported by a separate, short, concise statement of material facts, each set forth in separately numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." LR 56(b)(1). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly converted." LR 56(f).

### B.    Undisputed Material Facts

The Court has reviewed Hudson's Statement of Undisputed Material Facts (R. Doc. 13-1), and the accompanying citations to the factual record (R. Docs. 13-4, 13-5, 13-6, 13-7, 13-8, 13-9). As Plaintiff does not oppose the instant Motion for Summary Judgment, and has not otherwise submitted an opposing statement of material facts, the Court concludes that the facts contained in Hudson's Statement of Undisputed Material Facts are admitted for the purposes of determining whether summary judgment is appropriate. *See* Fed. R. Civ. P. 56(e); LR 56(g).

The undisputed material facts are as follows.[1] On January 25, 2018, the date of the accident, Plaintiff worked as a professional truck driver who transported chemicals while driving exclusively for L&B. At all pertinent times, L&B was a trucking company operating in interstate commerce, and Plaintiff was able to drive his truck in interstate commerce pursuant to L&B's ability to do so. Plaintiff was an "owner-operator" who owned the 2000 Freightliner tractor involved in the accident. A substantial portion of L&B's fleet was comprised of owner-operators such as Plaintiff.

---

[1] Unless otherwise stated, these undisputed material facts are derived from Plaintiff's deposition testimony provided on July 10, 2020 (R. Doc. 13-5) and/or Plaintiff's statement on November 12, 2018 (R. Doc. 13-6).

Plaintiff effectively leased his truck to L&B pursuant to a "Contractor Agreement" entered on October 5, 2016. (R. Doc. 13-7). The Contractor Agreement identifies the specific 2000 Freightliner that Plaintiff was driving at the time of the accident. (R. Doc. 13-7 at 10). Under the Contractor Agreement, Plaintiff was to be paid 65% of the fee charged by L&B for a delivery, while the remaining 35% of the fee was retained by L&B. (R. Doc. 13-7 at 8). Plaintiff does not own a trailer and pulls chemical-hauling trailers owned by L&B.

Plaintiff testified that when the accident occurred, he was driving from his home in Gonzales, Louisiana, to the L&B trucking terminal and yard in Port Allen, Louisiana ("L&B facility"). Plaintiff acknowledged that he only used his 2000 Freightliner for business / commercial purposes and that L&B stickers/signs were located on the vehicle at the time of the accident. Prior to the accident, Plaintiff had received dispatch instructions from L&B to transport a load of chemicals from a Syngenta chemical plant in Louisiana to a destination in St. Louis, Missouri. Plaintiff was on his way to the L&B facility to pick up the L&B trailer and bill of lading needed to make the delivery when the accident occurred. Plaintiff also intended to purchase two new tires at the L&B facility and had received permission from an L&B dispatcher to meet the tire supplier at the L&B facility. Plaintiff did not make any detours for any personal purposes prior to the accident.

Section 5(a)(i) of the Contractor Agreement imposed on Plaintiff the responsibility of maintaining "in the state of repair required by all applicable regulations, as required in 49 CFR part 396" and to make all repairs on a timely basis. (R. Doc. 13-7 at 3). Plaintiff testified that L&B essentially relied upon him to tend to the details of maintaining the tractor in a condition that would satisfy L&B's legal obligations. Plaintiff agreed that in maintaining the vehicle he was properly caring for a business asset used to make money for both L&B and for himself. Section 5(j) of the Contractor Agreement also required Plaintiff to "notify carrier immediately of

any incidents or accidents involving any operation under this agreement." (R. Doc. 13-7 at 4). Consistent with the foregoing requirement, Plaintiff contacted a representative of L&B immediately after the accident.

Plaintiff acknowledged that both he and L&B handled the events after the accident exactly in the manner they are supposed to follow when a commercial tractor vehicle is involved in a work-related accident, rather than as some incident involving the operation of a personal vehicle being operated for personal purposes. Plaintiff testified that a representative of L&B took photos at the scene of the accident. The L&B representative also helped Plaintiff to move his truck from the accident location to L&B's Port Allen yard. From there, the L&B representative transported Plaintiff to undergo urine and breathalyzer testing, as required by applicable regulations, at a medical facility (Prime Occupational Medicine) that effectively functioned as a "company doctor" for L&B.

### C. Pertinent Policy Provisions

Hudson has submitted a certified copy of the Non-Trucking Auto Liability policy at issue (the "Policy"). (R. Doc. 13-4). Subject to its terms and conditions, the Policy provides a primary layer of coverage and an excess layer of coverage. The Certificate of Insurance provides that Plaintiff is the "named insured" and the "covered auto" is Plaintiff's 2000 Freightliner. (R. Doc. 13-4 at 3).

The Policy explicitly states that it does not provide commercial trucking liability coverage for commercial operations that are intended to generate economic or commercial benefit, and specifically excludes coverage when used to carry property in any business, en route for such purpose, or while used in the business of anyone to whom the vehicle is rented:

> This policy does not provide commercial trucking liability coverage for commercial operations that are intended to generate economic or commercial benefit. Instead, this policy supplements **your** commercial trucking liability

> coverage to provide Non-Trucking Liability Coverage. The Non-Trucking
> Liability Coverage provided by this policy expressly excludes coverage for any
> covered **auto** "while used to carry property in any business or en route for such
> purpose" or "while used in the business of anyone to whom the **auto** is rented"
> (See Section II - Liability Coverage, B. Exclusion 15).

(R. Doc. 13-4 at 15; *see* R. Doc. 13-4 at 19).

The Policy's uninsured/underinsured motorist ("UM") coverage endorsement provides

that "it is subject to all terms of [the Policy] and does not provide broader coverage." (R. Doc.

13-4 at 19). As with the liability coverage's "business purpose" exclusion, the UM coverage

endorsement excludes coverage of bodily injury or property damage arising from the use of the

covered vehicle "while (i) used to carry property in any business or en route for such purpose; or

(ii) used in the business of anyone to whom the covered **auto** is rented." (R. Doc. 13-4 at 4). The

excess layer of coverage provides that it "will follow the same provisions, exclusions and

limitations that are contained in the applicable 'controlling underlying insurance.'" (R. Doc. 13-4

at 47). Finally, the "Certificate of Insurance" adds that no coverage is afforded under the policy

when the covered vehicle is "[u]nder motor carrier direction, control, or **dispatch**." (R. Doc. 13-

4 at 3) (emphasis added).

### D.     Analysis of Coverage Under the Policy

The Court applies substantive state law in a diversity action. *Erie Railroad Co. v.

Tompkins*, 304 U.S. 64 (1938); *see ACS Construction Co., Inc. of Mississippi v. CGU*, 332 F.3d

885, 888 (5th Cir. 2003) ("We look to state law for rules governing contract interpretation."). In

support of summary judgment, Hudson does not specifically argue that Louisiana law governs

the interpretation of the Policy, but nevertheless relies primarily on decisions interpreting

Louisiana law. Given the lack of any opposition, the Court will look to Louisiana law as the

controlling substantive state law.

Insurance policies must be interpreted in accordance with the rules for interpreting contracts in general. *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003) ("An insurance policy is a contract between the parties and should be construed using the general rules of interpretation set forth in the Louisiana Civil Code."). "If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written." *Smith v. Matthews*, 611 So. 2d 1377, 1379 (La. 1993); *see* La. Civ. Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."). "However, any ambiguous provisions in an insurance contract must be construed in favor of coverage to the insured and against the insurer who issued the policy." *Smith*, 611 So. 2d at 1379. Additionally, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050.

The Court finds the applicable language in the Policy to be clear and unambiguous. In particular, the Fifth Circuit has held that the phrase "in the business of" in a nontrucking use endorsement is unambiguous. *See Empire Fire and Marine Ins. Co. v. Brantley Trucing, Inc.*, 220 F.3d 679, 681 (5th Cir. 2000) (applying Texas law); *Maheffey v. Gen. Sec. Ins. Co.*, 543 F.3d 738, 741 (5th Cir. 2008) (applying Louisiana law). While application of the endorsement to the facts of a case may pose difficult questions, the "in the business of" language as used in a nontrucking use endorsement is "unambiguous" and that "issue is properly resolved as a matter of law on a motion for summary judgment." *Maheffey*, 543 F.3d 738, 741.

Having reviewed the applicable provisions of the Policy as a whole, and having considered the undisputed facts of this action, the Court concludes that coverage is excluded by the Policy. The Fifth Circuit decisions *Brantley Trucking* and *Mahaffey* are instructive. In *Brantley Trucking*, the Fifth Circuit held that the "in the business of" language "clearly refers to

7

occasions when the truck is being used to further the commercial interests of the lessee." *Brantley Trucking*, 220 F.3d at 682. The trucker, while waiting for cargo to load at the trucking company's terminal, drove his truck to a service station to have its oil changed, pick up auto parts, and have other maintenance performed. *Id.* at 680. On his way back to the trucking company's terminal, the trucker was involved in an accident. *Id*. The Court held that the trucker was acting in the trucking company's business as a matter of law because he was furthering its commercial interests when he was "only biding his time while the cargo loaded" and was not "out pursuing leisurely engagement." *Id*. at 682.

In *Mahaffey*, the Fifth Circuit held that a trucker was acting "in the business of" a trucking company where he called the dispatcher after dropping off a load, was told to "take the rest of the night off and call in the morning to see if they had a load," and then, after eating, showering, and relaxing at a truck stop for 6-7 hours, was in accident on his way to a motel. *Mahaffey*, 543 F.3d 738. Among other things, the Court noted that "unlike driving home after completing deliveries, driving to a motel far from home in order to sleep to be adequately rested, when asked to remain in the area to see if a load becomes available, is a work-related function for a commercial driver because commercial drivers are required to have a certain number of rest hours between hauls. *Mahaffey*, 543 F.3d 738, 743 (5th Cir. 2008) (citing 49 C.F.R. § 395.1 (2007) (providing time limits on driving hours and minimum rest times).

Other courts have reached similar conclusions. *See Richardson v. Zurich Am. Ins. Co.*, No. 17-571, 2017 WL 5499792, at *3 (E.D. La. Nov. 16, 2017) (trucker was in the business of trucking company where he picked up a load in Tyler, Texas, dropped off the load in Dubach, Louisiana, and, while returning to Tyler, Texas in anticipation of receiving a new load, spent the night in Greenwood, Louisiana to have a tire changed and was in an accident the following morning); *Williams v. Great Am. Ins. Co.*, 240 F. Supp. 3d 523, 528 (E.D. La. 2017) (trucker was

acting in the business of trucking company after delivering a load, remaining on standby or dispatch to pick up his empty trailer and then receive another load, and taking a federally mandated break when the accident occurred); *George v. Suarez*, No. 2018-0484, 2019 WL 168526 (La. App. 1st Cir. 2019) (unpublished) (trucker was acting in the business of trucking company where he was driving to the trucking company's facility to pick up an assigned trailer to carry a load for its customer pursuant to pre-dispatch instructions); *see also LeBlanc v. Bailey*, 700 So.2d 1311 (La. App. 4 Cir. 1997) (trucker was no longer in the business of a trucking company after he made his last delivery, was not under dispatch or standby for further deliveries, and was on his way home when an accident occurred.).

Here, the undisputed facts support a finding that Plaintiff was operating in the business of L&B and in furtherance of its commercial interests when the accident occurred. Plaintiff was travelling to the L&B facility to pick up a trailer and bill of lading for the purposes of delivery, as well as to have two tires changed with the permission of the L&B dispatcher. Plaintiff was driving a heavy, commercial tractor that was placed under lease to L&B. Plaintiff was directly on his way to the L&B facility when the accident occurred and made no detour or deviation. Immediately after the accident, Plaintiff reported the accident to L&B, whose safety director went out to the scene of the accident, took pictures, assisted Plaintiff in bringing the tractor to the L&B facility, then took him to the L&B company doctor for drug testing. These undisputed facts, which are derived from Plaintiff's own deposition and statement, support a finding, as a matter of law, that Plaintiff was operating "in the business of" L&B at the time of the accident. Accordingly, under the plain language of its provisions, the Hudson policy does not afford Plaintiff any coverage with respect to the instant accident.

In failing to oppose the instant Motion for Summary Judgment, Plaintiff does not raise the argument (anticipated by Hudson) that his decision to meet an individual at the L&B facility

for the purposes of purchasing two tires resulted in a deviation from operating "in the business of" L&B at the time of the accident. (*See* R. Doc. 13-2 at 16-19). Section 5(a)(i) of the Contractor Agreement specifically required Plaintiff to tend to the maintenance of his tractor in accordance with 49 CFR part 396. (R. Doc. 13-7 at 2). The replacement of tires falls within such repair and maintenance.[2] Accordingly, that Plaintiff was planning on purchasing two new tires at the L&B facility supports a finding that he was operating "in the business of" L&B at the time of the accident.

## III.    Conclusion

Based on the foregoing,

**IT IS ORDERED** that Hudson Insurance Company's Motion for Summary Judgment (R. Doc. 13) is **GRANTED**. Plaintiff's claims against Hudson Insurance Company are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on January 19, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] *See* 49 CFR 396.3(a)(1) ("Every motor carrier and intermodal equipment provider must systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles and intermodal equipment subject to its control. Parts and accessories shall be in safe and proper operating condition at all times. These include those specified in part 393 of this subchapter and any additional parts and accessories which may affect safety of operation, including but not limited to, frame and frame assemblies, suspension systems, axles and attaching parts, wheels and rims, and steering systems.")